UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON

| | | |
|---|---|---|
| Qin Xie, et al., | ) | CASE NO. 5:23 CV 2288 |
| | ) | |
| Plaintiffs, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| Jackson Local School District | ) | |
| Board of Education, et al., | ) | <u>Memorandum of Opinion and Order</u> |
| | ) | |
| Defendants. | ) | |

## INTRODUCTION

This matter is before the Court upon Defendants' Motion for Summary Judgment (Doc. 46). This is a Section 1983 action. For the reasons that follow, Defendants' Motion for Summary Judgment is GRANTED.

## BACKGROUND

This case concerns the 2020-2021 school year (the "School Year") at Jackson Memorial Middle School (the "Middle School"). During that time, plaintiff Qin Xie's ("Ms. Xie") daughter S.G. was in seventh grade at the Middle School. Because of the on-going COVID-19 pandemic, defendant Jackson Local School District, Board of Education ("Jackson LSD") offered students, including S.G., the option of either in-person or online education. Students utilizing online education did so using a school-issued Chromebook. During the School Year, S.G. attended classes both in person and online.

While the parties dispute the accuracy of the records, it is undisputed that Jackson LSD's records from the School Year indicate that S.G. frequently failed to attend virtual classes or

complete assignments. Several of S.G.'s teachers attested to her absences and missing assignments. Nevertheless, Plaintiffs maintain that S.G. did attend her virtual classes and did submit her assignments electronically, but her school-issued Chromebook failed to record her attendance and/or submissions.

The parties also dispute the extent of the Defendants' attempts to address Plaintiffs' insistence that the school-issued Chromebook was the problem. The record is clear however that Defendants were in frequent communication with Ms. Xie about the issues with S.G.'s attendance and assignment and they offered several work-around options to address the allegedly faulty Chromebook, including giving S.G. the option to provide screenshots of her attendance and complete make-up work during academic detentions. S.G. also took her Chromebook to the Middle School's technology help desk. Unfortunately, S.G. continued having issues attending class and submitting assignments. Plaintiffs maintained that the problem was a faulty Chromebook. Ultimately, however, S.G. was referred to a truancy prevention mediation conference with the Stark Country Family Court and received a failing grade in several of her classes.

Ms. Xie filed suit against Defendants[1] on behalf of herself and S.G., premised on her belief that S.G. was attending her virtual classes and submitting her assignments, but the school-issued Chromebook failed to record either one. In an essence, Ms. Xie faults Defendants for failing to fix S.G.'s Chromebook and instead issuing her daughter failing grades and referring her to truancy

---

[1] Along with the Jackson LSD, Plaintiffs name several individual Jackson LSD employees as defendants. The Complaint names each employee-defendant in their official capacity only.

2

mediation, which Ms. Xie alleges was done in retaliation for Ms. Xie insisting that Defendants were incorrectly blaming S.G. for her attendance and assignment issues.

Plaintiffs' Complaint identifies five causes of action: (1) "Due Process; 42 U.S.C. §1983; R.C. §Section[sic] 3313.64," (2) "Equal Protection; 42 U.S.C. § 1983; R.C. §3313.64," (3) "Due Process; Ohio Constitution, Art. I, Sec. 16; R.C. §3313.64," (4) "Equal Protection; Ohio Constitution, Art. I, Sec. 2; R.C. §3313.64," and (5) "Intentional and/or Negligent Infliction of Severe Emotional Distress." (Doc. 1.) Defendants have now moved for summary judgment in their favor as to all five causes of action. Plaintiffs oppose the motion.

## STANDARD OF REVIEW

Summary judgment is appropriate only where "there is no genuine dispute as to any material fact[.]" Fed. R. Civ. P. 56(a); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine dispute of material fact rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The mere existence of a scintilla of evidence in support of the [moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [moving party]." *Id.* at 252.

The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). In doing so, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

"The nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Fulson v. Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). "The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) (citing *Frito–Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249–50 (citation omitted).

## ANALYSIS

Defendants contend that all of Plaintiffs' claims fail as a matter of law. The Court will address each in turn.

### A.  Ms. Xie's Individual Claims

As an initial matter, Defendants contend that several individual claims asserted by Ms. Xie fail as a matter of law because they are time barred by the applicable statutes of limitations. Defendants are correct.

4

The applicable statute of limitations for Section 1983 claims arising in Ohio is two years. *LRL Props. v. Portage Metro Housing Auth.*, 55 F.3d 1097, 1105 (6th Cir. 1995); *Nadra v. Mbah*, 119 Ohio St. 3d 305, 312 (2008). Likewise, the applicable statute of limitations for claims of negligent infliction of emotional distress under Ohio is also two years. *Lawyer Coop. Publ'g Co. v. Muething*, 603 N.E.2d 969, 974–75 (Ohio 1992).[2]

Here, Plaintiffs do not dispute that their claims had accrued by, at the latest, August 17, 2021. Plaintiffs did not file their complaint until November 28, 2023. Accordingly, to the extent Ms. Xie has asserted any individual Section 1983 and/or negligent infliction of emotional distress claims, any such claims are barred by the applicable statute of limitations and, thus, fail as a matter of law.

**B.  Plaintiffs' Claims Under Section 1983**

Plaintiffs assert their First and Second Causes of Action pursuant to 42 U.S.C. § 1983, alleging violations of Plaintiffs' rights guaranteed by the Due Process and Equal Protection clauses of the Fourteenth Amendment of the United States Constitution. Plaintiffs bring these claims against Jackson LSD and several individual employees in their official capacities.[3]

---

[2] Plaintiffs' contention that both claims are instead subject to Ohio Rev. Code § 2305.09(D)'s four-year statute of limitations completely ignores the above-cited, controlling precedent. *LRL Props.*, 55 F.3d at 1105 ("[This Court has] definitively held that 'the appropriate statute of limitations for 42 U.S.C. § 1983 civil rights actions arising in Ohio . . . requires that actions . . . be filed within two years after their accrual.'" (quoting *Browning v. Pendleton*, 869 F.2d 989 (6th Cir. 1989) (en banc))); *Muething.*, 603 N.E.2d at 975 ("[W]e hold that claims of negligently inflicted humiliation or loss of reputation must be asserted within two years of their discovery, pursuant to R.C. 2305.10.").

[3] In their opposition brief, Plaintiffs acknowledge that their Complaint names the employee-defendants in their official capacities only. Nevertheless, Plaintiffs claim that the explicit language of their own pleadings is not dispositive, and this Court should instead read in claims against the employee-defendants in their individual capacities. In support of this request, Plaintiffs cite one

Section 1983 claims brought against individuals in their "official capacities" are treated as being brought against the government entity itself—a *Monell* claim. *Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1245 (6th Cir. 1989). It is well established that a government entity may not be sued for injuries inflicted solely by its employees or agents under Section 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *see also, e.g.*, *Baynes v. Cleland*, 799 F.3d 600, 620 (6th Cir. 2015); *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014). Rather, a plaintiff may only hold a government entity liable under Section 1983 for the entity's own wrongdoing. *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006) ("Section 1983 does not permit a plaintiff to sue a local government entity on the theory of *respondeat superior*." (citing *Monell*, 436 U.S. at 692–94)). Or, as the Sixth Circuit explained, "a municipality is liable under § 1983 only where, 'through its deliberate conduct,' it was 'the 'moving force' behind the injury alleged.'" *D'Ambrosio*, 747 F.3d at 388–89 (quoting *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013)).

To properly allege an institutional liability claim, a plaintiff must adequately allege "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or

_____

case: *Sollenberger v. Sollenberger*, 173 F. Supp. 3d 608, 630 (S.D. Ohio Mar. 25, 2026). In *Sollenberger*, the plaintiff failed to designate any capacity in the complaint, which left the Court no choice but to rely on the pleadings to determine the scope of the claim. That is not the case here. Here, Plaintiffs' Complaint explicitly names the employee-defendants in their official capacities only. Plaintiffs have neither sought nor been granted leave to amend their complaint and Plaintiffs cannot do so through their summary judgment briefing. *Howard v. Tennessee*, 740 F. App'x 837, 843 (6th Cir. 2018) ("[P]laintiffs cannot raise new claims in their summary judgment briefing and should instead request leave to amend their complaint."); *see also Davis v. Echo Valley Condo. Ass'n*, 945 F.3d 483, 496 (6th Cir. 2019) ("Parties who seek to raise new claims at the summary-judgment stage must first move to amend their pleadings under Federal Rule of Civil Procedure 15(a) before asserting the claims in summary-judgment briefing.").

supervision; or (4) the existence of a custom of tolerance [of] or acquiescence [to] federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013); *see also D'Ambrosio*, 747 F.3d at 386. Further, there can be no liability under *Monell* without an underlying constitutional violation. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). *See also North v. Cuyahoga Cty.*, 754 F. App'x 380, 389 (6th Cir. 2018) ("There must be a constitutional violation for a § 1983 claim against a municipality to succeed—if the plaintiff has suffered no constitutional injury, his *Monell* claim fails.").

### 1. Due Process Claims

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." There are two types of due process claims—"procedural" and "substantive." *United States v. Salerno*, 481 U.S. 739, 746, (1987) (distinguishing the two concepts). It is not clear which type of claim Plaintiffs advance here and, thus, the Court addresses each in turn.

### a. Procedural Due Process

A procedural due process claim turns on whether there exists a liberty or property interest which has been interfered with by the State, and whether the procedures attendant upon that deprivation were constitutionally sufficient. To establish a procedural due process claim, plaintiffs "must first identify a protected liberty or property interest of which [they were] deprived." *Jordan v. Strouther*, 2022 WL 620119, at *4 (6th Cir. 2022) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 570–71 (1972)). Only then will courts "examine whether the procedures attendant upon that deprivation were constitutionally sufficient." *Id.* (citing *Pusey v. City of Youngstown*, 11 F.3d 652, 656 (6th Cir. 1993)).

Without citing any case law, Plaintiffs contend that "Plaintiffs had a property interest in a public education. That interest necessarily includes the grades S.G. received, without which would undermine her academic position and abilities." (Doc. 51, at 19.) While Plaintiffs do have a property interest in access to a public education, *Goss v. Lopez*, 419 U.S. 565, 574 (1975), other courts have consistently held that that right does not extend to grading.[4] *E.g.*, *James v. Cleveland Sch. Dist.*, 45 F.4th 860, 866 (5th Cir. 2022). Rather, due process is triggered only by a student's "total exclusion from the educational process." *See Dickens by Dickens v. Johnson Cty. Bd. of Educ.*, 61 F. Supp. 155, 157–58 (E.D. Tenn. 1987) (quoting *Goss*, 419 U.S. at 576).

It is undisputed that S.G. was never expelled or suspended for any period of time. Nor have Plaintiffs pointed this Court to any evidence that Defendants otherwise prevented S.G. from attending classes—either virtually or in person.[5] Accordingly, Plaintiffs cannot establish that their due process rights to public education were violated.

---

[4] To be sure, the specific grades assessed to individual students and disciplinary procedures espoused in Jackson LSD's student handbook are wholly discretionary. "[A] party cannot possess a property interest in the receipt of a benefit when the state's decision to award or withhold the benefit is wholly discretionary." *Med. Corp., Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002); *see McClain v. N.W. Cmty. Corr. Ctr. Judicial Corr. Bd.*, 440 F.3d 320, 330 (6th Cir. 2006) ("No constitutional entitlement to procedural due process can logically arise when the decision-maker's power is wholly discretionary.").

[5] Plaintiffs briefly mention in their opposition brief that "S.G., as well as other students, encountered repeated problems with their Chromebook . . . include[ing] repeated inability to login, computer crashes, substantial delay in computer processing, and blank screens." (Doc. 51, at 15.) Plaintiffs, however, include zero citations to the record for these claims. In any event, Plaintiffs do not contend these issues rose to a constitutional deprivation of her right to access public education and, in fact, Plaintiffs maintain that Ms. Xie witnessed her daughter successfully attending virtual classes and submitting assignments.

8

Plaintiffs do not identify any other alleged protected liberty or property interest of which they were deprived and, thus, cannot establish a violation of their procedural due process rights.

### b.  Substantive Due Process Rights

Claims for violations of a plaintiff's substantive due process rights involve the deprivation or infringement of a protected liberty interest. *See Mares v. Mia. Valley Hosp.*, 96 F.4th 945, 955 (6th Cir. 2024). "[T]he interests protected by substantive due process are . . . much narrower than those protected by procedural due process." *Bell v. Ohio State Univ.*, 351 F.3d 240, 249–50 (6th Cir. 2003). The "liberty" protected by the Due Process Clause of the Fourteenth Amendment includes "two categories of substantive rights[:]" (1) "rights guaranteed by the first eight Amendments" and (2) "a select list of fundamental rights that are not mentioned anywhere in the Constitution." *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2246 (2022). Under either category, a right must be "deeply rooted in [our] history and tradition" and must be "essential to our Nation's 'scheme of ordered liberty.'" *Id.*

Here, the only "right" Plaintiffs discuss is S.G.'s property right to access public education in Ohio. S.G.'s right to public education, however, is neither a right guaranteed by the first eight Amendments, nor a fundamental right. *Seal v. Morgan*, 229 F.3d 567, 575 (6th Cir. 2000) ("[T]he Supreme Court has held explicitly that the right to attend public school is not a fundamental right for the purposes of due process analysis." (citing *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 33–37 (1973)); *Wayne v. Shadowen*, 15 F. App'x 271, 282–83 (6th Cir. 2001) ("[N]o child in America, irrespective of any particular status or condition, possesses any affirmative federal constitutional entitlement to a publicly-funded, tuition-free education." (emphasis omitted); *see also Papasan v. Allain*, 478 U.S. 265, 284 (1986) (remarking that public education "is not among the

rights afforded explicit protection under our Federal Constitution." (quoting *Rodriguez*, 411 U.S. at 35)); *Plyler v. Doe*, 457 U.S. 202, 221 (1982) ("Public education is not a 'right' granted to individuals by the Constitution." (citing *Rodriguez*, 411 U.S. at 35)).[6]

Accordingly, Plaintiffs have failed to establish any substantive due process violation.

For all these reasons, Plaintiffs have failed to establish that Defendants violated their rights under the Due Process Clause of the Fourteenth Amendment and Defendants are entitled to judgment entered in their favor as to Plaintiffs' First Cause of Action.[7]

### 2. Equal Protection Claims

The Equal Protection Clause of the Fourteenth Amendment prohibits a state from denying to "any person within its jurisdiction the equal protection of the laws." The Equal Protection Clause embodies the principle that all persons similarly situated should be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

"The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). "[O]nce disparate treatment is shown, the equal protection analysis to be applied is determined by the classification used by government

---

[6] A parent's right to direct their child's education is recognized as fundamental, however, that right does not encompass the ability to direct how a school district provides an education. *Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381, 395 (6th Cir. 2005) ("The critical point is this: While parents may have a fundamental right to decide whether to send their child to a public school, they do not have a fundamental right generally to direct how a public school teaches their child."). Further, as discussed above, Ms. Xie's individual Section 1983 claims are time barred.

[7] Even if Plaintiffs had established a cognizable due process violation, they wholly fail to tie that violation to any policy or custom within the Jackson LSD. *See Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019) (explaining that a Section 1983 claims against a political subdivision are established by "showing that the [political subdivision] had a 'policy or custom' that caused the violation of [the plaintiff's] right").

decision-makers." *Id.* In making an equal protection challenge, the plaintiff bears the initial burden of demonstrating that some discrimination has occurred against him or her, which has not occurred against other individuals who were similarly situated. *City of Cleburne*, 473 U.S. at 439; *Clements v. Fashing*, 457 U.S. 957, 967 (1982).

In their complaint, Plaintiffs allege that other students at the Middle School also missed classes and assignments like S.G., but white and/or Caucasian students were not referred to truancy mediation or required to submit to detention like S.G.[8] In their opposition brief, however, Plaintiffs do not proffer any evidence of this alleged disparate treatment. In fact, Plaintiffs do not even discuss this basis of their equal protection claim at all. At most, Plaintiffs say that "[i]n June 2021, S.G.'s email and Chromebook access were revoked while other students retained theirs." (Doc. 51, at 20.) Simply, Plaintiffs have presented no evidence that any Defendant discriminated against S.G. because of her membership in any protected class.[9]

―――――――――――――――――

[8] Plaintiffs also allege in their Complaint that Defendants retaliated against Ms. Xie. According to Plaintiffs, "the more Ms. Xie expressed her position that Defendants were incorrect in their assessments about S.G. being absent and not submitting her work, the more Defendants resisted and ignored Ms. Xie's plea, including accusing her of manipulating documents, such as screenshots showing S.G.'s attendance and other communications between S.G. and her teachers, including her communications with Ms. Billing and Ms. Johnson. Such conduct was tantamount to retaliation against Plaintiffs for exercising their rights under the constitution[.]" (Doc. 1 ¶ 89.)

As discussed, Ms. Xie's individual Section 1983 claims are barred by the statute of limitations. But even if this claim was not time barred, or it somehow alleged retaliation against S.G., it would still fail because, among other shortcomings, Plaintiffs have not pointed this Court to any evidence that even remotely ties the alleged retaliation to a policy or custom within the Jackson LSD. *See Jackson*, 925 F.3d at 828. At most, Plaintiffs have alleged isolated incidents taken by unnamed individual Defendants. (Doc. 51, at 20.) But Jackson LSD "may not be held liable under § 1983 on a *respondeat superior* theory[.]" *Id.*

[9] To be sure, Defendants presented evidence that of six total students referred to truancy mediation during the School Year, four were white and/or Caucasian. Further, white and/or Caucasian

11

Accordingly, Plaintiffs have failed to establish their claim that Defendants violated their Equal Protection Rights under the Fourteenth Amendment and Defendants are entitled to judgment entered in their favor as to Plaintiffs' Second Cause of Action.

### C.  Plaintiffs' Third and Fourth Causes of Action: Claims Under the Ohio Constitution

Plaintiff's Third and Fourth Causes of Action purport to allege claims under Article I, Section 16 ("Section 16") and Article I, Section 2 ("Section 2") of the Ohio Constitution. The problem, however, is that neither Section 16 nor Section 2 creates a private cause of action. *Autumn Care Ctr., Inc. v. Todd*, 22 N.E.3d 1105, 1110 (Ohio Ct. App. 2014) (citing *State v. Williams*, 88 Ohio St.3d 513, 523 (2000)).

Plaintiffs concede that neither Section 16 nor Section 2 is self-executing but contend— without citing any authority—that Ohio Rev. Code § 3313.48 is an enabling statute.[10] Ohio Rev. Code § 3313.48 is not an enabling statute. Its language provides no explicit private cause of action.

Accordingly, Plaintiffs' Third and Fourth Causes of Action fail to state any cognizable claim and Defendants are entitled to judgment entered in their favor.

---

students were referred for detention during the School Year. Plaintiffs have not cited any evidence that refutes these numbers.

[10] Plaintiffs also mention Ohio Rev. Code § 3313.64 in their complaint and opposition brief, but they never claim it is an enabling statute. To be sure, it is not. *See Forest Hills Loc. Sch. Dist. Bd. of Educ., v. Huegal*, 2003 WL 21496835 (2003).

12

**D.  Plaintiffs' Fifth Cause of Action: Intentional and/or Negligent Infliction of Emotional Distress**

Plaintiffs' Fifth Cause of Action names a claim for intentional and/or negligent infliction of emotional distress under Ohio law. Whichever type of claim, Defendants are entitled to statutory immunity.

When applying Ohio law, courts must employ a three-tier analysis to determine whether a political subdivision is entitled to immunity from civil liability under Ohio Rev. Code § 2744.02. *Cater v. Cleveland*, 697 N.E.2d 610, 614 (Ohio 1998). First, Section 2744.02(A)(1) sets out a general rule that political subdivision is not liable in damages. *Greene Cty. Agric. Soc. v. Liming*, 733 N.E.2d 1141, 1146 (Ohio 2000). In setting out this rule, Section 2744.02(A)(1) classifies the functions of political subdivision into governmental and proprietary functions, and states that the general rule of immunity is not absolute but is limited by the exceptions found in Section 2744.02(B). *Id.* Under the second tier of the analysis, it must be determined whether any of the exceptions in Section 2744.02(B) apply. *Id.* If any of the exceptions are found to apply, the third tier of analysis is a consideration of the defenses found in Section 2744.03. *Id.*

Here, Jackson LSD is a political subdivision.[11] None of the exceptions enumerated in Section 2744.02(B) apply.[12] As such, Defendants are immune from liability for Plaintiffs' negligent

---

[11] Because the Jackson LSD employee-defendants were sued only in their official capacity, the claims against them are treated as against Jackson LSD itself. *Chesher v. Neyer*, 477 F.3d 784, 797 (6th Cir. 2007) ("The Ohio Court of Appeals has held that an action against an officer in his 'official capacity' is simply another way of pleading an action against the governmental entity itself." (citing *Norwell v. City of Cincinnati*, N.E.2d 1223, 1232 (Ohio Ct. App. 1999))).

[12] Confusingly, Plaintiffs do not contend that any of the exceptions enumerated in Section 2744.02(B) apply, but they argue that Defendants are not entitled to immunity because they acted with malicious purpose, in bad faith, or in a wanton or reckless manner. (Doc. 51, at 22–24.) This

and/or intentional infliction of emotional distress claims and entitled to judgment entered in their favor on the same.[13]

**CONCLUSION**

      For all the aforementioned reasons, Defendants' Motion for Summary Judgment (Doc. 46) is GRANTED.

      IT IS SO ORDERED.

                                    PATRICIA A. GAUGHAN
                                    United States District Judge

---

inquiry is irrelevant, however, where, as here, none of the exceptions enumerated in Section 2744.02(B) apply.

[13] Even if Defendants were not entitled to statutory immunity, Plaintiffs' claims fail. Plaintiffs cannot establish any claim for negligent infliction of emotional distress because they have not provided any evidence suggesting they witnessed an accident or otherwise were within a sphere of danger causing them to fear bodily harm, as required for a traditional negligent infliction of emotional distress claim. *Gearing v. Nationwide Ins. Co.*, 76 Ohio St. 3d 34, 40 (1996) ("Ohio courts have limited recovery for claims alleging negligent infliction of emotional distress to situations such as where the plaintiff was a bystander to an accident or was in fear of physical consequences to his own person.").

Nor can Plaintiffs establish any claim for intentional infliction of emotional distress because they have not pointed this Court to any sufficiently extreme and outrageous conduct. *See Phung v. Waste Mgmt., Inc.*, 644 N.E.2d 286, 289 (Ohio 1994). At most, Plaintiffs contend they experienced "humiliation, dishonor, disgrace, indignity, shame, embarrassment[,] and severe stress" because S.G. was referred to truancy mediation, assigned academic detention, and received failing grades in several classes. (Doc. 51, at 28.) This falls short of the types of conduct found to be extreme and outrageous under Ohio law. *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 453 N.E.2d 666, 671 (Ohio 1983) ("Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" (citation omitted)).

14